UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

AMY R. COZART-LUNDIN and
ANDREA M. COZART-LUNDIN,

     Debtors.
_____/

Case No. 22-02296-swd
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT: HONORABLE SCOTT W. DALES
     Chief United States Bankruptcy Judge

Last year, after Marrs & Terry, PLLC (the "Firm") filed its First Post-Confirmation Application for Attorney Fees (ECF No. 59, hereinafter the "Fee Application"), the court carefully reviewed the Fee Application. Despite the absence of objection from the Debtors or their trustee or other interested parties, the court nevertheless issued an order (1) identifying specific concerns about the Firm's itemization of charges; and (2) giving the Firm an opportunity to address these concerns either by requesting a hearing or voluntarily reducing the amount of the proposed award.

In response to the court's concerns, the Firm voluntarily reduced the Fee Application by just over $400 and the court reviewed it again. After this second review and still without objection, the court entered the Order Approving First Post-Confirmation Fee Application (ECF No. 64) on August 15, 2023.

About a month later, the Debtors filed a letter (ECF No. 65) revealing that their relationship with the Firm had deteriorated, complaining about the Firm's representation, and coupling their request for a "thorough examination" of the Firm's fees with "the issues [they] faced under [Ms. Marrs'] advisement." In response, the court conducted a status conference in late October 2023, and issued a third order touching on the Firm's fees, advising the Debtors that "nothing that occurred during the status conference precludes the Debtors from seeking reconsideration of the

court's decision to award fees and costs to Ms. Marrs." *See* Order After Status Conference (ECF No. 68) at 1.  Nearly eight months later, the Debtors filed the Debtors' Objection and Request for Disgorgement of Attorney Fees Paid to Michelle Marrs (ECF No. 82, the "Objection").

The Firm filed a response (ECF No. 89, the "Response") to the Objection, and the court conducted a hearing on July 17, 2024, in Kalamazoo, Michigan, during which the Debtors and Ms. Marrs each offered oral arguments.

The Debtors link their request for disgorgement of fees to Ms. Marrs's alleged malpractice (actually using that term in their Objection), rather than arguing that her fees were somehow "excessive" under a lodestar analysis.  *See In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991) ("The Supreme Court has made it clear that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees.").  This emphasis on supposed malpractice makes sense, given that the court reviewed the Firm's fees under *In re Boddy* on two occasions last year -- both on its own initiative, unprompted by any objection from the Debtors.  The court's review resulted in a meaningful reduction in the fee award through the twin lenses of §§ 329 and 330(a)(3).  Those two sections work together in a chapter 13 case to ensure that a debtor's counsel receives "reasonable" but not "excessive" compensation.  So, when the court issued the Order Approving First Post-Confirmation Fee Application (ECF No. 64) on August 15, 2023, it necessarily determined -- after careful examination described in the Order Regarding Fee Application (ECF No. 61) -- that the Firm's Fee Application (as amended) sought fees in a reasonable, and therefore not excessive, amount.  Although courts award fees during a case on an interim basis under § 331, the court regards the Order Approving First Post-Confirmation Fee Application as the law of the case, a

decision not set in stone, but also not easily or lightly disturbed.[1]   The Attorney Grievance Commission ("AGC") evidently viewed the court's order as settled on the issue of the supposed overbilling.  *See* Letter from Cynthia C. Bullington to Andrea and Amy Cozart-Lundin dated Dec. 1, 2023 (attached to the Response and expressing the AGC's decision not to investigate the Debtors' allegations against Ms. Marrs under M.C.R. 9.112(C)(1)(a)).

The court will not revisit its prior conclusion, reached after conducting the lodestar analysis, that the Firm charged the Debtors a reasonable, and not excessive, fee, in connection with the case.

But, as noted above, the tenor of the Debtors' objection is not so much that the fees were excessive (the concept underlying disgorgement by motion under Rule 2017 and § 329) but that the Firm committed malpractice when representing them in connection with their bankruptcy case. Two important consequences flow from this observation, one jurisdictional, the other procedural.

First, the court's jurisdictional concern.  As the Sixth Circuit recently observed, a debtor's claim against her bankruptcy attorney for malpractice in connection with the bankruptcy case is a post-petition claim, not part of the debtor's bankruptcy estate under § 541.  *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 986 F.3d 633, 641 (6th Cir. 2021) ("Thus, at the time of the Blasingames' filing, the malpractice claims were not a legal interest under Tennessee law such that they could be considered as property of the bankruptcy estate under federal law.").[2]  The court, therefore, does not have *in rem* jurisdiction over the claims under 28 U.S.C. § 1334(e), and malpractice claims, which owe their existence to state law, do not "arise under" Title 11.  Even

---

[1] "The purpose of the law-of-the-case doctrine is to ensure that 'the same issue presented a second time in the same case in the same court should lead to the same result.'"  *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (citation omitted).  It is a prudential or discretionary practice that applies where, as here, the court has actually decided an issue. *Id*.

[2] The Sixth Circuit, which cited *Biberstine v. Woodworth*, 406 Mich. 275 (1979), in its analysis in *Blasingame*, would likely reach the same result under Michigan law.  *Blasingame*, 986 F.3d at 639.

assuming the court has "arising in or related to" jurisdiction to resolve the Debtors' malpractice claims under 28 U.S.C. § 1334(b), these claims against Ms. Marrs or the Firm likely involve non-core proceedings better left for a state court judge with general jurisdiction, not a bankruptcy judge with limited authority. *See* 28 U.S.C. § 157(b) (listing core proceedings). During the hearing, Ms. Marrs also made this point.

Second, and procedurally, pursuit of a malpractice claim seeking recovery of damages should not proceed by motion. *Compare* Fed. R. Bankr. P. 2017 (Examination of Debtor's Transactions with Debtor's Attorney) with 7001(a) (adversary proceedings governed by Part VII of the Bankruptcy Rules include proceedings "to recover money or property, other than … a proceeding under … Rule 2017 …"). Indeed, Rule 7001(1) expressly excludes disputes under Rule 2017 from the rules of Part VII, likely because disgorgement of excessive fees under § 329 involves limited issues that a court may resolve by "motion" under Rule 2017 using *In re Boddy's* somewhat mathematical lodestar analysis, whereas a malpractice action sounds in tort and raises numerous and complicated claims, defenses, and policy concerns under applicable non-bankruptcy law -- and likely a right to trial by jury. It would be utterly unfair to require Ms. Marrs to defend against the Debtors' malpractice claims in the current procedural posture.

Because the court believes that the Debtors' malpractice claims should proceed, if at all, in another forum, it will not comment further on the merits of the Debtors' claim, beyond noting, for whatever it is worth, that the AGC did not regard the claimed ethics lapses as worthy of investigation.[3]

---

[3] To be sure, the AGC's decision not to investigate Ms. Marrs does not preclude a legal malpractice claim. After all, a violation of the Michigan Rules of Professional Conduct is only a basis for discipline, not damages. *See* M.R.C.P. 1.0(b) ("The rules do not, however, give rise to a cause of action for enforcement of a rule or for damages."). However, if the AGC did not regard Ms. Marrs's conduct as worthy of investigation, let alone discipline, the Debtors may face an uphill climb in proving a civil malpractice claim against Ms. Marrs.

For the foregoing reasons, the court will overrule the Debtors' Objection, without prejudice to pursuit of their malpractice claims in an appropriate forum.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Objection is OVERRULED without prejudice to the pursuit of any malpractice claims in an appropriate forum.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Michelle Marrs, Esq., the Debtors, the chapter 13 trustee, the United States Trustee, and all parties requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 18, 2024**



Scott W. Dales
United States Bankruptcy Judge